Moss, Judge,
delivered the opinion of the court:
Plaintiff, Ponce & Guayama Eailroad Company, a corporation organized under and by virtue of the laws of the State of New Jersey, operated a railroad in Porto Eico during the years 1917 and 1918. In March, 1918, plaintiff filed with the treasurer of the island of Porto Eico an income-tax return for the year 1917, and paid to said' treasurer an income tax of 2% on the income shown in the return to wit: $1,342.36. Thereafter, plaintiff was required to pay to the Government of the United States for the same year an equal tax of $1,342.36, being 2% on its net income. It was further required to pay to the Government of the United States a 4% tax on said income, amounting to $2,684.72. The transactions involving these payments are fully set forth in the findings herein. Plaintiff filed claim for the refund of each of said sums. The claim for $1,342.36 was allowed, and the claim for $2,684.72 was rejected. This action is for the recovery of that sum. In allowing the refund of the first claim the Commissioner of Internal Eevenue adopted the contention of plaintiff, that having paid said tax to the treasurer of Porto Eico it was under no obligation to pay same to the Government of the United States. On this point defendant is now contending that the action of the’commissioner in respect thereto was erroneous and illegal, and is asserting a counterclaim for the recovery of same.
The question to be determined is whether or not plaintiff corporation, organized and existing under the laws of New Jersey, and operating a railroad in the island of Porto Eico, is required under the applicable statutes to pay to the Government of the United States income taxes of 2% and 4% on its net income for the year 1917.
The 2% tax is provided for by the revenue act of 1916, 39 Stat. 756, the pertinent portions of which are as follows:
“ SectioN 10. That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, joint-stock company, or association, * * * organized in the United States, no matter how created or *601 organized, income * * * a tax of two per centum upon such H= JJ w *
The 1916 act was expressly extended to Porto Rico by section 23 of the act, which reads as follows:
“That the provisions of this title shall extend to Porto Rico and the Philippine Islands: Provided, That the administration of the law and collection of the taxes imposed in Porto Rico and the Philippine Islands shall be by the appropriate internal revenue officers of those governments, and all revenues collected in Porto Rico and the Philippine Islands thereunder shall accrue intact to the general Governments thereof, respectively: * * (Our italics.)
In strict conformity with the provisions of this section plaintiff made its return of the 2% tax to the appropriate internal-revenue officers of the government of Porto Rico, and paid its tax to the treasurer of Porto Rico. By section 23, the general provisions of the act of 1916 were extended to Porto Rico, but the administration of the law and the collection qf the taxes were explicitly lodged in the officials of the government of Porto Rico; and the revenue thus produced accrued intact to the government of Porto Rico, and was paid to that government. By this payment plaintiff discharged its full tax liability under the act of 1916, and the action of the Commissioner of Internal Revenue in refunding this tax was correct.
The 4% tax is controlled by section 4 of the revenue act of 1917, 40 Stat. 300, the applicable portions of which are as follows:
“ That in addition to the tax imposed by subdivision (a) of section 10 of such act of September eighth, nineteen hundred and sixteen, as amended by this act, there shall be levied, assessed, collected, and paid a like tax of four per centum upon the income received in the calendar year nineteen hundred and seventeen and every calendar year thereafter, by every corporation * * * subject to the tax imposed by that subdivision of that section. * *
Plaintiff contends that it is not liable for the 4% tax, because of the provisions of section 5 of the 1917 act, which reads as follows:
“ That the provisions of this title shall not extend to Porto Rico or the Philippine Islands, and the Porto Rican or *602 Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income-tax laws in force in Porto Rico or the Philippine Islands, respectively.”
We are unable to agree with that contention. While its business was located, and its income produced, entirely in Porto Rico, plaintiff was a New Jersey corporation. In order to determine the class of corporations subject to the 1917 4% tax, it is necessary to refer to said subdivision (a) of section 10 of the act of 1916 which provides:
“ That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from oil sources by every corporation, joint-stock company or association, or insurance company, organized in the United States, no matter how created or organized, but not including partnerships, a tax of two per centum upon such income; * * *.
“ The foregoing tax rate shall apply to the toted net income received by every taxable corporation, joint-stock company or association, or insurance company in the calendar year 1916 and in each year thereafter * * .. (Italics ours.)
Plaintiff corporation clearly falls within the meaning of the provisions just quoted, and is subject to the 4% tax, unless it is exempt therefrom under the provisions of section 5 above set forth. It will be observed that both the 2% tax and the 4% tax were imposed upon the total net income received from all sowrees by every corporation oo'ganized in the United States. But as hereinabove pointed out, the act of 1916 explicitly provided the manner of payment, and the disposition of the revenue produced by said 2% tax. To the extent that this tax provided revenue for the expenses of the administration of the government of Porto Rico, the Government of the United States was benefited. By that simple method the Government of the United States was saved the useless task of collecting the tax, and in turn appropriating same, or an equal sum, to the maintenance of the Porto Rican government. An entirely different situation is presented with respect to the 1917 act. At the time of its enactment the United States was at war with Germany, and the announced purpose of the act was to increase the revenue to meet the increased expenses growing out of the war. We *603 do not believe that Congress intended to exempt from taxation a New Jersey corporation deriving taxable income from business conducted in Porto Eico. We are of the opinion that in the enactment of section 5 Congress merely intended to abolish the provisions of section 23 of the 1916 act with respect to the administration of that law, and the collection of the taxes and the payment of same into the treasury of the Porto Eican government. In lieu of such provision Congress empowered the Porto Eican Legislature to construct its own income-tax scheme, which authority was actually exercised by that government in 1919. By reason of the provisions of section 23 of the 1916 act authorizing the administration of that act by the Porto Eican authorities, the act became in effect the local revenue law for Porto Eico. However, section 5 of the 1917 act authorized and empowered the Porto Eican Legislature to set up its own income-tax scheme; but in prescribing that “ The provisions of this title shall not extend to Porto Eico * * Congress manifestly had reference only to corporations organized in Porto Eico, with which the Porto Eican Legislature was empowered to deal in constructing its own income-tax laws, and did not intend to exempt from the operations of the 1917 act United States corporations deriving income from business conducted in Porto Eico. The construction of the act contended for by plaintiff would effectually defeat its announced purpose. The action of the commissioner in rejecting the claim for the refund of this tax was correct. Both the petition and the counterclaim will be dismissed, and it is so adjudged and ordered.
SiNNOtt, Judge; GreeN, Judge; Geaiiam, Judge; and Booth, Ghief Justice, concur.